724 F.Supp. 468 (1989)
UNION BANK, Plaintiff,
v.
FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION As Conservator of Fidelity Federal Savings Bank; Warrenton Farms, Inc.; Wichita Equine, Inc.; Hiawatha Savings & Loan Association; Central Rock Mineral Co., Inc.; C.H.W. Construction Company, Inc., Defendants.
Civ. A. No. 89-194.
United States District Court, E.D. Kentucky, Lexington Division.
October 31, 1989.
*469 John E. Hinkel, Jr., Lexington, Ky., for plaintiff.
Thomas E. Meng, Richard G. Griffith, Stites & Harbison, Lexington, Ky., for Hiawatha Sav. & Loan.
Randy D. Shaw, Scott T. Rickman, Morgan, Pottinger, Hastie & Murray, Lexington, Ky., for defendant Federal Sav. & Loan Ins. Corp.
Billy W. Sherrow, E. Douglas Stephan, Geralds, Moloney & Jones, Lexington, Ky., for defendant Hiawatha Sav.
E. Lawson King, Murphy, King, Enlow & Dunn, Lexington, Ky., for defendants Central Rock Min. Inc. and C.H.W. Const. Co., Inc.

MEMORANDUM OPINION
SCOTT REED, Senior District Judge.
This matter is before the court on the following motions:
1. the joint motion of defendants Fidelity and Hiawatha for an enlargement of time within which to file dispositive motions and responses,
2. the plaintiff's motion for an order of sale,
3. defendant Hiawatha's motion for leave to file a rebuttal memorandum,
*470 4. the cross-motions of the plaintiff and defendant Hiawatha for summary judgment.
This case originated in the Fayette Circuit Court as an action on two notes, held by the plaintiff, Union Bank, and defendant Fidelity Federal Savings Bank, respectively. Each note was secured by a mortgage on Warrenton Farm, located in Fayette County. The Fayette Circuit Court entered judgment in favor of the lienholders, Union and Fidelity, and ordered that the property be sold to satisfy the underlying debts. Union Bank's lien was held to have first priority, and Fidelity's second priority. Before the property was sold, Hiawatha Savings and Loan Association was permitted to intervene to assert its rights under a "Participation Agreement" between itself and Fidelity. Pursuant to that agreement Hiawatha owned a 37.5 percent share of the note and mortgage held by Fidelity.
The judicial sale of Warrenton Farm was delayed, and during the period of delay Fidelity and Hiawatha entered into a "Foreclosure Bid Agency and Escrow Agreement" (Bid Agreement). The Bid Agreement provided for the appointment of the law firm of Sturgill, Turner and Truitt as agent for Fidelity and Hiawatha, for purposes of bidding at the foreclosure sale. Fidelity and Hiawatha agreed to pool funds to pay the underlying debt to Union if their agent was the successful bidder. The agent was to bid the entire outstanding debt owed relative to the property.
Subsequent to the signing of the Bid Agreement, the Federal Home Loan Bank Board appointed the Federal Savings and Loan Insurance Corporation (FSLIC) as conservator of Fidelity. The FSLIC removed the action to this court, and thereafter notified Hiawatha of its intention to repudiate the Bid Agreement. The FSLIC has subsequently been succeeded as conservator by the Resolution Trust Corporation (RTC).
Union and Fidelity have been granted judgments, respectively, on the notes they hold. The only issue remaining to be decided is whether the RTC is obligated to honor the provisions of the Bid Agreement.
Union's motion for an order of sale is not contested on the merits. Rather, Hiawatha has sought to delay the sale until after the court has ruled on the issue of the enforceability of the Bid Agreement. This issue is the subject of the cross-motions for summary judgment filed by Hiawatha and Fidelity (through RTC). The court intends to dispose of all pending motions simultaneously with the filing of this Memorandum Opinion, and thus will order the judicial sale of Warrenton Farm by separate order filed herewith. The court will further grant the defendants' motions for enlargement of time, and Hiawatha's motion for leave to file a rebuttal memorandum.
Regarding the cross-motions for summary judgment, the court notes that on August 9, 1989, the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") became effective. That act contains a provision which allows the conservator of a financial institution to disaffirm or repudiate a contract:
(A) to which the institution is a party;
(B) the performance of which the conservator or receiver determines in the conservator's or receiver's discretion to be burdensome; and
(C) the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.
Financial Institutions Reform Recovery and Enforcement Act of 1989, Pub.L. 101-73, Title II, § 212(a), Sec. 11(e)(1), 103 Stat. 222 (1989) (codified as amended at 12 U.S.C. 1821).
Hiawatha contends that this provision does not grant the RTC the right to repudiate the Bid Agreement. It advances several arguments as to why § 212(a), Sec. 11(e)(1) of the Act should not apply, none of which the court finds to have merit. The strongest argument advanced by Hiawatha is that the RTC's attempted repudiation was not made within a "reasonable period following [RTC's] appointment [as conservator]". FIRREA, § 212(a), Sec. 11(e)(2). However, in enacting the FIRREA, Congress specifically elected not to impose a *471 particular time limitation within which the conservator may properly repudiate. Thus whether the conservator has repudiated within a reasonable time depends upon the circumstances of the case. In the instant case the conservator was appointed on April 6, 1989. The FIRREA, which empowers the conservator to repudiate did not become effective until August 9, 1989. Formal repudiation under the statute was communicated on August 24, 1989, within three weeks of the effective date of the statute. There is no indication that Congress intended the statute to apply only to contracts entered after the effective date of the statute. Given the large sum of money involved, the unusual nature of the Bid Agreement, and the necessity of determining the potential resale value of Warrenton Farm (and thus the value of the Bid Agreement), this court is of the opinion that the RTC repudiated the contract within a reasonable period under the circumstances.
Hiawatha next argues that § 212(a), Sec. 11(e)(1) was not intended by Congress to permit repudiation of a participation agreement, because such agreements involve the ownership of property interests, rather than contractual interests. This court need not reach this issue, because it finds that the Bid Agreement is a separate and independent agreement, not involving joint ownership of property. The subject matter of the Bid Agreement is the appointment of an agent to bid on the property at the foreclosure sale, in order to keep the bidding price up to at least the amount of the two outstanding notes. Although each institution's financial obligation under the Bid Agreement was in the same proportion provided for in the participation agreement, the Bid Agreement nonetheless was not dependent upon the participation agreement for its existence and thus was a separate agreement, subject to repudiation by Fidelity's conservator. The RTC has not attempted to repudiate the participation agreement.
Hiawatha contends further that the attempted repudiation should be held ineffective because the conservator has not shown, as required under § 212(a), Sec. 11(e)(1)(B), that the contract is "burdensome." Hiawatha proposes that a contract is "burdensome" only when it will cause "actual loss" to the institution. There have been no cases reported which pass upon the parameters of the "burdensome" standard of the FIRREA. However, the general rule regarding the powers of an assignee or receiver is that such assignee or receiver "is not bound to adopt the contracts, accept the leases, or otherwise step into the shoes of his assignor if, in his opinion, it would be unprofitable or undesirable to do so." United States Trust Co. v. Wabash Railway, 150 U.S. 287, 288, 14 S.Ct. 86, 87, 37 L.Ed. 1085 (1893) (emphasis added). Similarly, a trustee in bankruptcy, (which Hiawatha analogyzes to the conservator of a financial institution), is afforded a right to reject an executory contract which he feels is undesirable, in his sound business judgment. Lubrizol Ent. v. Richmond Metal Finishers, 756 F.2d 1043, 1047 (4th Cir. 1985). This court is of the opinion that Congress did not intend for the term "burdensome" to be applied in the restrictive manner proposed by Hiawatha. Rather, under the rule set forth in the Wabash case, supra, the conservator may repudiate a contract the performance of which the conservator believes, in his discretion, would be detrimental to the conservation of the assets of the institution.
This rule is further supported by the language which Congress employed in the statute. The FIRREA by its terms places the determination of whether a contract is burdensome within the conservator's discretion.
In the instant case the conservator (RTC) cited, as grounds for repudiation, the probability that the purchase and resale of Warrenton Farm contemplated under the Bid Agreement would bring about no return to Fidelity on the underlying debt. The RTC acted within the discretion afforded it under the FIRREA.
Because the RTC properly exercised its statutory right to repudiate the Bid Agreement this court will grant summary judgment *472 in favor of Fidelity, and will deny Hiawatha's motion for summary judgment.
Upon repudiation the conservator may be held liable for actual damages determined as of the date of appointment of the conservator. FIRREA, § 212(a), Sec. 11(e)(3). Hiawatha has not stated a claim for such damages, and the circumstances reflect that it suffered no actual damages as of the date of appointment of the conservator. Therefore no damages will be awarded.
An order and judgment reflecting the findings herein is filed separately.