**REXAM LIMITED PARTNERSHIP, S.E. and Rexam Corporation**

v.

**RESOLUTION TRUST CORP., as Receiver for Caguas Central Federal Savings Bank.**

Civ. No. 90–2087 (JP).

United States District Court, D. Puerto Rico.

May 1, 1991.

---

Russell A. Del Toro, Romero Barceló, Del Toro & Santana, Hato Rey, P.R., for plaintiff.

Gustavo A. Gelpí, Feldstein, Gelpí, Hernández & Gotay, San Juan, P.R., for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it defendant Resolution Trust Corporation's Motion to Dismiss for Lack of Subject Matter Jurisdiction, with an Opposition thereto; and plaintiff Rexam Limited Partnership's ("REXAM") Motion for Summary Judgment, with an Opposition thereto. The plaintiff is the assignee of the Rexach Construction Corporation. The defendant Resolution Trust Corporation (the "RTC") is the receiver for Caguas Central Federal Savings Bank of Puerto Rico ("Caguas Central"), as provided by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"). Federal jurisdiction is invoked pursuant to 12 U.S.C. § 1821(d)(6)(A). For the reasons stated herein, the defendant's Motion to Dismiss must be DENIED and the plaintiff's Motion for Summary Judgment must be GRANTED.

## I. THE FACTS

In October of 1985 Caguas Central entered into an agreement with the Puerto Rico Regulations and Permits Administration ("ARPE"), whereby ARPE granted

Caguas Central authorization to construct an office tower for its own use, upon the condition that Caguas Central donate a parcel of the property approximately equivalent to 966.73 square meters to the Department of Transportation (the "DTOP") of the Commonwealth of Puerto Rico. The donation of the land was for the expansion of a roadway in order to mitigate traffic congestion on Roosevelt Avenue, San Patricio Avenue and 2 Park Side Street, the streets which border the construction project. Joint Exhibit A, 1985 ARPE Authorization. The same condition of donation was imposed when the ARPE agreement was later modified on March 25, 1988. Joint Exhibit B, 1988 ARPE Authorization. On March 31, 1987, Caguas Central sold its construction project to the Rexach Corporation (the plaintiff Rexam's assignor). Joint Exhibit C, Agreement of Sale between Caguas Central and Rexach Corp. The Agreement of Sale incorporated the requirements and conditions imposed by ARPE in its authorization. Joint Stipulation of Fact no. 15. In addition, the Agreement of Sale provided that Rexach would hold title to those parcels of land upon which the project was to be constructed, with the exception of the area where the Caguas Central principal offices were to be constructed and the strip which was to be donated to DTOP for roadway expansion. The purchase price for the sale of the land plus development costs (which included the cost of Caguas Central obtaining approval of the construction project from ARPE), was set a $6,500,000.00. When the Agreement of Sale was executed Rexach paid Caguas Central $1,300,000.00 in cash with the proviso that the $5,200,000.00 difference was to be paid with a sale back to Caguas Central of 41,600 square feet of office space at $125.00 per square foot. Stipulated Fact no. 13. This contract was later assigned and transferred by Rexach to Rexam, with Caguas Central's consent. *Id.* On March 30, 1989, Rexam paid Caguas Central an additional $3,000,000.00. Stipulated Fact no. 16.

Rexam has nearly completed the construction project and needs to expand the roadway for DTOP as required by the ARPE Authorization, in order to obtain a use permit for the construction site. Joint Stipulation of Fact no. 22. On January 25, 1991 the RTC as receiver for Caguas Central repudiated its contractual obligation to donate the strip of land to DTOP for roadway expansion. Joint Exhibit I, RTC Letter to Rexam.

In its Motion to Dismiss, the defendant RTC alleges that the Court lacks subject matter jurisdiction over this case, because of RTC's power to repudiate contracts under FIRREA 12 U.S.C. § 1821(e)(1), and due to the FIRREA provision for the unrestrained power of the RTC. 12 U.S.C. § 1821(j). The plaintiff alleges in its Motion for Summary Judgment that the RTC is bound by the contract it made with ARPE and thus RTC should be ordered to draft a segregation/donation deed for the strip of land in dispute. The Court shall address each motion accordingly.

## II. SUBJECT MATTER JURISDICTION

■ The Court originally obtained jurisdiction over this case pursuant to 12 U.S.C. § 1821(d)(6)(A) which provides that a FIRREA "claimant may ... file suit on such claim ... in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located...." The defendant now claims that its repudiation of the ARPE contractual obligation on January 25, 1991, denies this Court of subject matter jurisdiction, because

> Except as provided in this section, no court may take any action except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise or powers or functions of the Corporation as a conservator or a receiver.

12 U.S.C. § 1821(j).[1] Yet the aforementioned statutory section specifically states "except as provided in this section." Thus

---

1. The defendant also cites 12 U.S.C. § 1464(d)(6)(C), as support for the proposition of the RTC's unrestricted power. The defendant

neglects to note the amended language of § 1464(d)(6)(C) which has no relevance to the issue of unrestricted power. Nor did the defen-

the RTC's power is not completely unrestricted.

In fact, 12 U.S.C. § 1821(d)(6)(A) provides for the judicial review of the RTC's decision to allow or disallow a claim at the end of the statutory 180 day period or within 60 days of the RTC's notification that a claim is disallowed. If a claimant prefers to seek administrative review of the RTC's decision, then "the final determination of the Corporation with respect to such claim shall be subject to judicial review under chapter 7 of Title 5." 12 U.S.C. § 1821(d)(7)(A). These FIRREA sections demonstrate that the RTC's discretionary power is not without limit. Furthermore, other federal courts have found it within their discretion to review the RTC's repudiation of contracts. *Union Bank v. Federal Savings and Loan Insurance Corp.*, 724 F.Supp. 468 (E.D.Ky.1989). In *Union Bank*, the RTC's decision to repudiate a contract was effectively deemed equivalent to a decision of disallowing the claim itself. Hence, in this case the RTC's right to solely compensate a claimant with monetary damages once it repudiates a contract, (rather than the specific performance remedy the plaintiff requests in this case), does not interfere with the Court's jurisdiction to review the RTC's repudiation of the contract itself. Therefore, subject matter jurisdiction is not lacking in this case and the defendant's Motion to Dismiss must be DENIED. As the defendant also raised the defense of contract repudiation in its Opposition to the Motion for Summary Judgment, the Court's substantive review of the RTC's repudiation of the contract shall follow, in the Court's discussion of the Motion for Summary Judgment.

## III. SUMMARY JUDGMENT—STANDARD OF REVIEW

■ A motion for summary judgment is appropriate when:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989); *see e.g., Medina–Muñoz v. R.J. Reynolds*, 896 F.2d 5 (1st Cir.1990). A "genuine" issue is one that is dispositive, and must therefore be decided at trial. *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A "material" fact is one which affects the outcome of the suit and must be resolved before attending to related legal issues. *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d at 181.

■ Essentially, Rule 56(e) mandates that summary judgment be entered against a party who fails to establish the existence of an element essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Thus, the burden is first on the movant, to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. at 325, 106 S.Ct. at 2554. Thereafter, the burden shifts to the nonmovant to establish the existence of a genuine material issue. *Brennan v. Hendrigan*, 888 F.2d at 191. The nonmovant, however, cannot rest upon mere allegation or denial of the pleadings. Fed.R.Civ.P. 56. In the instant case, there does not exist a genuine issue of material fact which must be decided at trial, thus the defendants' dispositive motion must be granted and judgment entered in favor of the plaintiff.

---

dant file a motion requesting modification of its statutory reference. The amended section reads as follows.

If the Director determines that a savings association—

(i) has failed to establish and maintain the procedures described in subparagraph (A); or

(ii) has failed to correct any problem with the procedures maintained by such associa-

tion which was previously reported to the association by the Director,

the Director shall issue an order under section 8 of the Federal Deposit Insurance Act [12 U.S.C.A. § 1818] requiring such association to cease and desist from its violation of this paragraph or regulations prescribed under this paragraph.

12 U.S.C.A. § 1464(d)(6)(C) (West Supp.1991).

## IV. FIRREA CONTRACT REPUDIATION

■ FIRREA provides that:

In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease—

(A) to which such institution is a party;

(B) the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and

(C) the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.

12 U.S.C. § 1821(e)(1). In one court's application of the FIRREA repudiation provision, *Union Bank v. Federal Sav. and Loan Ins. Corp.*, 724 F.Supp. 468 (E.D.Ky. 1989), the RTC's repudiation of a contract was upheld based upon the RTC's finding that a foreclosure bid agreement would be burdensome upon the RTC because the purchase and resale of collateral contemplated under the agreement would bring about no return to the institution on the underlying debt. In contrast, the instant case offers very little elucidation about the manner in which compliance with the contract would be burdensome or interfere with the orderly administration of the RTC's affairs. The RTC's repudiation letter merely notified the plaintiff that the contract would be disaffirmed, but did not inform the plaintiff of the reasons for the repudiation.[2] The defendant's Opposition to the Motion for Summary Judgment states that compliance with the contract would result in a loss of 16 parking spaces which it has determined that it needs. Although, as the defendant admits in its Opposition to the Motion for Summary Judgment at 7, ARPE regulations do not permit the defendant to utilize the strip of land in question as a parking area, the RTC requested a provisional permit for the parking spaces (Joint Exhibit G), which was denied by DTOP for insufficient documentation (Joint Exhibit F).

Yet the conversion of the strip of land from provisional parking spaces into roadway expansion, cannot be deemed burdensome by the Court, when the record demonstrates that the contractual agreement between Caguas Central and Rexam provided for a specific procedure if Caguas Central wanted parking spaces in addition to those already provided for in the contract. Joint Exhibit D. The Purchase and Sale Agreement's Option for Additional Space specifically stipulated:

To sell and deliver to Caguas Central such additional office and parking spaces, in the event Caguas Central decides to purchase additional office space and/or parking space in excess of the spaces herein agreed to at a price to be negotiated upon Caguas Central's request in writing, which request must be made by Caguas Central not later than ten (10) days after the date on which Rexam notifies Caguas Central that it will offer for sale to the public the remaining office and parking spaces.

Joint Exhibit D, at 5.

Furthermore, Caguas Central itself meant for the 16 parking spaces to be utilized only temporarily while the Rexam construction project was in progress. Joint Exhibit H, Caguas Central Letter to DTOP of July 29, 1987. As the defendant has already received $4,300,000.00 from the plaintiff towards the purchase price for the sale of the land (which includes the development cost of obtaining ARPE authorization), the $9,000.00 price per parking space cannot be deemed by the Court as burdensome to the RTC or as an interference with

---

**2.** The plaintiff argues that the RTC may not repudiate an executory contract. Yet the 31 L.P.R.A. § 3451 provision for the mandatory implementation of executory contracts is not applicable in this case. It is not applicable because the obligation to donate the strip was not conditioned upon the completion of the construction project (which was substantially performed by the plaintiff); rather ARPE approval was conditioned upon the donation of the strip. And it is the ARPE—Caguas Central agreement which the RTC is in effect repudiating in this case, not the executory contract between Rexam and Caguas Central.

the orderly administration of the RTC's affairs. Stipulated Facts no. 13 and no. 16. The RTC's assertion that the Court's denial of the strip of land as its private parking area would be burdensome, is further weakened by the fact that the strip is being utilized as a parking area without any legal authorization by ARPE. (Joint Exhibit F). The illegality of such makeshift parking makes the defendant's request for judicial notice that such parking is commonplace within the urban area of the construction site, immaterial to the Court's examination of the RTC's contractual obligations. The defendant does not allege that its donation of the strip would obligate it to purchase parking spaces in another area. Without the legal obligation to purchase parking spaces, the RTC is at liberty to decide that it will forego the purchase of parking spaces in order to better conserve its funds, while at the same time complying with the ARPE donation requirement.

The defendant's additional argument that the Puerto Rico law of donation supports its decision to repudiate the contract is not meritorious, in that such a legal argument is not a rationale which FIRREA recognizes for RTC repudiation of contracts. 12 U.S.C. § 1821(e)(1). Furthermore, the RTC's substantive legal argument concerning the law of donation is in of itself an inadequate defense for the following reasons.

## V. PUERTO RICO LAW OF DONATION

■ The defendant alleges that the plaintiff is not entitled to summary judgment because the donation of the strip of land to the DTOP was never made valid in a public instrument pursuant to 31 L.P.R.A. § 2010. The defendant fails to note the commonsensical distinction between a claim to a gift being invalid, and a claim to enforcement of an obligation to make a gift. Title 31 L.P.R.A. § 2010 would be relevant to this case only if DTOP claimed that it was currently the rightful owner of the strip of land in question and the RTC wished to dispute that contention. Such is not the case here. What is at issue in the instant case, is the plaintiff's right to compel the defendant to abide by its contractu-

al obligation to donate the strip of land to DTOP.

Title 31 L.P.R.A. § 3374 provides that "[s]hould the contract contain any stipulation in favor of a third person, *he may demand its fulfilment,* (sic) provided he has given notice of his acceptance to the person bound before it may have been revoked." In addition,

> [s]ui generis agreements (or atypical or innominated contracts, as they are commonly termed in the civil law) may freely be created under Puerto Rico law. See Santiago, supra. This is a corollary of freedom of contract, a cornerstone of both the Spanish and Puerto Rican Codes.... The *parties' intention is the primary law between them.*

*In re Daben Corp.,* 469 F.Supp. 135 (D.P.R.1979) (emphasis added and citations omitted). Thus Caguas Central's initial agreement with ARPE to donate the strip of land to DTOP (Joint Exhibits A and B), and its later agreement with Rexam to abide by the ARPE requirements including that of donating the strip of land (Joint Exhibit C), together formed a sui generis agreement whereby the defendant's donation of the strip of land to DTOP would enable the construction project it sold to the plaintiff to go forward, making the plaintiff a third party who benefited from the initial agreement between Caguas Central and ARPE. Parties are entitled to formulate such agreements as long as they are not in contravention of law, morals or public order. *Tastee Freez v. Employment Security Bureau,* 108 D.P.R. 495 (1979); 31 L.P.R.A. § 3372 (1968).

The stipulation between Caguas Central and ARPE was in favor of the plaintiff in this case, in that the successful completion of its construction project was directly linked to the implementation of the stipulation. Because Rexam provided notice of its acceptance of the stipulation (before the RTC revoked the contractual obligation), in the Agreement of Sale provision which mandated conformity with all ARPE requirements, it now has standing to demand the fulfillment of the ARPE—Caguas Central stipulation, pursuant to 31 L.P.R.A.

§ 3374. The record demonstrates that the intention of the parties was to have the strip of land donated to DTOP in order to facilitate the construction project which Rexam undertook. (Joint Exhibits A, B, and C); and that the Agreement of Sale between Caguas Central and Rexam was advanced by the expectation of such facilitation. This intention is the primary law between the parties. *In re Daben Corp,* 469 F.Supp. 135 (D.P.R.1979). Accordingly, the Court finds that the RTC is obligated to comply with its demonstrated intent of donating the strip of land in exchange for ARPE authorization of the project Caguas Central sold to Rexam and hence wished to facilitate. Moreover, 31 L.P.R.A. § 3452 provides that:

> [s]hould the law require the execution of an instrument or other special formality in order to make the obligations of a contract binding, the contracting parties *may compel* each other to comply with said formalities from the moment in which consent and the other requirements, necessary for their validity, have taken place.

Hence, by virtue of its sui generis agreement with the defendant, the plaintiff may compel the RTC to secure the donation and segregation deed it needs as a formality for attainment of the use permit for the construction project the plaintiff contractually agreed to complete for Caguas Central.

Wherefore, in view of the foregoing the Court finds that there is no genuine issue of material fact in dispute, the plaintiff's Motion for Summary Judgment is hereby GRANTED, and the RTC is hereby ORDERED to fulfill its contractual obligation of providing a Segregation and Donation Deed for the strip in favor of DTOP. The RTC is further ORDERED to provide all additional documents or public instruments as may be required to effectuate the donation of the strip to DTOP.

IT IS SO ORDERED.