Douglas **CARDENTE** and Linda A. Cardente, Plaintiffs,

v.

**FLEET BANK OF MAINE, INC.,** Federal Deposit Insurance Corporation and Recoll Management Corporation, Defendants.

**Civ. No. 92–30–P–C.**

United States District Court, D. Maine.

June 16, 1992.

S. James Levis, Drummond, Woodsum, Plimptom & MacMahon, Portland, Me., for defendant Fleet Bank of Maine.

John S. Campbell, Poulos, Campbell & Zendzian, Portland, Me., for plaintiffs.

Kevin G. Libby, Portland, Me., for defendant F.D.I.C. and Recoll Management.

ORDER GRANTING DEFENDANTS FEDERAL DEPOSIT INSURANCE CORPORATION AND RECOLL MANAGEMENT CORPORATION'S MOTION TO DISMISS COUNTS I, II, AND III OF PLAINTIFFS' COMPLAINT

GENE CARTER, Chief Judge.

This case involves the repudiation by the Federal Deposit Insurance Corporation ("FDIC")[1] as lessee of a lease with Doug-

---

1. On January 6, 1991, Maine National Bank ("MNB") was declared insolvent and was closed by the Office of the Comptroller of the Currency, and the FDIC was appointed Receiver of the failed bank. The FDIC caused a so-called "bridge bank," New Maine National Bank ("NMNB"), to be chartered to provide MNB banking services on a continuing basis. On or about July 12, 1991, this entity was dissolved by the FDIC, which was appointed Receiver of NMNB by the Controller of the Currency. On the same date, Fleet Bank of Maine ("Fleet Bank") entered into an Assistance Agreement with the FDIC, pursuant to which Fleet Bank

las and Linda Cardente ("Plaintiffs"). As a result of this repudiation, Plaintiffs brought a Complaint filed January 21, 1992, seeking a declaratory judgment that its Note, Mortgage, and Agreement are unenforceable in light of Defendants' alleged breach of the lease. Defendants brought this motion to dismiss filed April 22, 1992, based on Plaintiffs' alleged failure to comply with the applicable statute of limitations, and failure to state a claim on the basis of the provisions of both 12 U.S.C. section 1821(e) and 12 U.S.C. section 1823(e).[2]

■ Plaintiffs' memorandum of law in opposition to Defendants' Motion to Dismiss was due on May 11, 1992, pursuant to Rule 19(c) of the Rules of the United States District Court for the District of Maine and Rule 6(a) of the Federal Rules of Civil Procedure. On May 5, 1992, Plaintiffs filed a Motion for Enlargement of Time to File Memorandum with Respect to Plaintiffs' Objection to Motion to Dismiss, requesting an enlargement of time until May 27, 1992 to file a Memorandum in Opposition to the Motion to Dismiss of Defendants the FDIC and RECOLL Management Corporation ("Plaintiffs' Memorandum"). The Court granted the motion for enlargement on May 8, 1992. Plaintiffs, however, untimely filed their Memorandum on May 28, 1992, thereby violating the Court's Order. Therefore, pursuant to Local Rule 19(c), Plaintiffs are deemed to have waived objection to Defendants' Motion to Dismiss, and the Court will grant said Motion to Dismiss. *See, e.g., United Transportation*

*Union v. Maine Central Railroad Co.,* 107 F.R.D. 383, 384 (D.Me.1985); *McDermott v. Lehman,* 594 F.Supp. 1315, 1324 (D.Me. 1984).

■ The Court notes in the interest of providing a complete decisional record that is likely to permit dispositive action on appeal that even had Plaintiffs timely filed their Memorandum, and the Court, on all the written submissions, had fully examined the merits of Defendants' Motion to Dismiss, it would have granted Defendants' Motion for the reasons that follow.[3]

## I. MOTION TO DISMISS

■ A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) will be granted "only if the plaintiff cannot prove any set of facts upon which relief may be granted." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The Court takes the allegations in the complaint as true, *see Knight v. Mills,* 836 F.2d 659, 664 (1st Cir.1987), and construes the complaint in the light most favorable to the plaintiff, *see Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102. At the same time, the Court need not accept conclusory allegations regarding the legal effect of events that do not reasonably follow from more specific facts that have been alleged to have occurred. *See Kadar Corp. v. Milbury,* 549 F.2d 230, 235 (1st Cir.1977).

## II. FACTS

In light of the above standard, the Court

---

purported to purchase the Promissory Note ("Note") and Mortgage and Security Agreement ("Mortgage") but left other loan documents with the FDIC.

2. The Court, in its discretion under Rule 19(f) of the Rules of the United States District Court for the District of Maine, *DENIES* Defendants' counsel's request, filed April 22, 1992, for oral argument on their Motion to Dismiss.

3. The Court notes that Defendants have also failed to comply with Local Rule 19. Specifically, they filed on June 11, 1992, their Reply Memorandum in Support of Motion to Dismiss, which totalled fourteen pages. Under Local

Rule 19(e), "[n]o reply memorandum shall exceed 5 pages." The Court has previously admonished counsel who have ignored Local Rule 19(e). *See Springfield Terminal Railway Co. v. United Transportation Union,* 767 F.Supp. 333, 355–56 (D.Me.1991); *Andrew Corp. v. Gabriel Electronics, Inc.,* 735 F.Supp. 24, 27 n. 1 (D.Me. 1990), *aff'd,* 930 F.2d 37 (Fed.Cir.1991). Although Defendants' counsel has appropriately noted Plaintiffs' counsel's failure to comply with Local Rule 19, it is ironic that they do so in a memorandum that fails itself to comply with another section of that Rule. In light of Defendants' counsel's failure in this regard, the Court has considered only the first five pages of Defendants' Reply Memorandum.

finds the following facts to be true.[4] In or about the summer of 1987, MNB made it known publicly that it was looking for a location in Auburn, Maine at which to locate a new branch. On April 4, 1988, by deed of that date, Plaintiffs purchased for $220,000 land and buildings located at 181 Center Street in Auburn, Maine ("Project").

On April 12, 1988, MNB issued a commitment letter to Douglas Cardente ("Commitment Letter"), in which it memorialized its offer to provide financing of $965,000 upon certain conditions including, *inter alia,* the execution and delivery of a commercial note, mortgage, and additional collateral of $250,000.[5] Cardente signed the Commitment Letter on April 22, 1988.

On April 13, 1988, Douglas Cardente, on behalf of Cardente Properties and The Sheridan Corporation, entered into a construction contract under which Sheridan was to perform certain construction work on the Center Street building.

On May 19, 1988, Douglas Cardente, as landlord, and MNB, as tenant, entered into a ten year lease ("Lease") for a portion of the Project at a base rent of $44,010 per year, subject to escalators of 3% per year. This rent reflected above-market rental rates.

On June 2, 1988, MNB held a closing on the $965,000 loan, which was designated by the Bank as a loan "for construction of an office and rental facility." At the closing, Defendants executed and delivered to MNB the Note for $965,000, the Mortgage for $965,000 as security for the Note, and the Agreement. Certain documents, including the Lease, Note, Mortgage, and Commitment Letter, were incorporated with a cover sheet by MNB's counsel into a single binder, which MNB maintained as an official record.

On July 19, 1991, the FDIC, in its capacity as Receiver, notified Douglas Cardente by letter that it was disaffirming the Lease effective December 1, 1991. In the interim, Fleet Bank took possession of the premises, paid the rent beginning in September 1991 and operated out of the premises extending beyond December 31, 1991. On August 28, 1991, Cardente wrote to Fleet Bank advising it that the Project was "built specifically" for MNB, that the financing arrangement was one contract with the Lease, and that it would not have been entered into if MNB had not simultaneously agreed to be the "anchor tenant." He objected to the purported rejection of the Lease and that the loan could not be serviced without MNB as the "anchor tenant."

On October 16, 1991, Cardente filed a Proof of Claim with the FDIC, claiming damages relating to the disaffirmance of the Lease. By letter dated November 20, 1991, the FDIC notified Cardente that it had denied his claim.

On January 21, 1992, Plaintiffs filed a Complaint in this Court.

> Because MNB's obligations under the Commitment Letter and Lease were an integral part of, and inextricably intertwined with, the reciprocal and bilateral rights and obligations created under the Contract, and were a condition to continued performance by the Cardentes, the FDIC's repudiation of the Lease effective December 31, 1991, constitutes a material breach of the contract and excuses further performance by the Cardentes ...
> *Id.,* ¶ 32.

**4.** The Court notes that Plaintiff's Complaint contains the following legal conclusions that it will not construe as true because they are not factual allegations:

> MNB's agreement to a long-term lease was a material and critical term of the entire transaction on which the Cardentes relied in entering into the transaction.
> Complaint, ¶ 14.
> A critical understanding in regard to the commitment, upon which the Cardentes at all times relied, was that MNB had a bilateral obligation to execute the long-term favorable lease and pay rent under that lease for at least ten (10) years.
> *Id.,* ¶ 18.
> The Loan Closing Documents executed by the parties constituted a single contract for the construction of the Project....
> *Id.,* ¶ 21.

**5.** The Commitment Letter provided that the loan proceeds would be issued only upon written requisitions as the renovations were made. It also provided that the loan was to be secured by a first mortgage, security interests in all equipment related to the building and all income and revenues, agreement to assign all leases (subject to Bank approval), and a leasehold mortgage in respect to all leases.

### III.  DISCUSSION

#### A.

As their first argument for dismissal of Plaintiffs' Complaint, Defendants assert that the Court has no jurisdiction to hear this Complaint because Plaintiffs failed to file the Complaint within the statutory period of 60 days, as prescribed under 12 U.S.C. § 1821(d)(6)(A) and (B).  *See* Memorandum of Defendants [FDIC] and Recoll Management Corporation in support of its Motion to Dismiss ("Defendants' Memorandum") at 4–5; Reply Memorandum of [FDIC] in Support of Motion to Dismiss at 3–5.  Pursuant to FIRREA, Plaintiffs had to file their Complaint by January 18, 1992, that is, within 60 days of the date of the notice of disallowance, which was dated November 20, 1991.  Defendants argue that Rule 6(a) of the Federal Rules of Civil Procedure [6] may extend a federal statute of limitation only if the statute is procedural and not jurisdictional.  *See* Reply Memorandum at 3–4.  They further assert that the statute at issue here is jurisdictional and, hence, that Rule 6(a) does not apply.  *See id.* at 4–5.  Therefore, they conclude that Plaintiffs' Complaint should be dismissed because it was filed on January 21, 1991, which fell outside the statutory period under FIRREA.

Plaintiffs assert that Rule 6(a) does apply to the statute of limitations under FIRREA and, that, therefore, because the 60th day fell on a Saturday and the following Monday was Martin Luther King Day, a federal holiday, they have met the statutory deadline under section 1821(d)(6)(A) and (B).  *See* Plaintiffs' Memorandum at 15.

The Court disagrees.  The "majority rule" is that the Rule 6 exclusion of final Saturdays, Sundays, and legal holidays is applicable to federal statutes of limitation.  *See* 4A C. Wright & A. Miller, *Federal Practice and Procedure* § 1163, at 465 (1987).  Where, however, the federal statute is jurisdictional, rather than merely procedural, the application of Rule 6 to extend the jurisdiction of the Court is not appropriate.  *See Hilliard v. United States Postal Service,* 814 F.2d 325, 327 (6th Cir. 1987); *King v. Dole,* 782 F.2d 274, 275 (D.C.Cir.1986); *Lofton v. Heckler,* 781 F.2d 1390, 1392 (9th Cir.1986).[7]

Here, because the time limitations in section 1821(d)(6) are jurisdictional prerequisites,[8] the Court may not apply Rule 6(a) to extend the Court's jurisdiction over Plaintiffs' untimely filed Complaint.  *Cf. Allgood v. Elyria United Methodist Home,* 904 F.2d 373, 375 (6th Cir.1990) ("We find that this six-month statute of limitations for hybrid section 301 suits … is procedural, not jurisdictional."); *Armstrong v. Tisch,* 835 F.2d 1139, 1140 n. 1 (5th Cir. 1988) ("[W]e have before us a regulation of the EEOC that affects another agency, the USPS. … [T]he regulation is not a congressional grant of jurisdiction to the federal courts.").  Therefore, even if Plaintiffs' counsel had not violated Local Rule 19(c), the Court would have dismissed Plaintiffs' Complaint for lack of timeliness under 12 U.S.C. section 1821(d)(6)(A) and (B).

In the interest, once again, of providing a complete record for dispositive appellate review of all issues now generated, the Court will address the remaining issues generated by Defendants' arguments on

---

**6.**  Rule 6(a) states:

In computing any period of time prescribed or allowed by these rules … or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, Sunday, or a legal holiday … in which event the period runs until the end of the next day which is not one of the aforementioned days.

**7.**  Rule 82 of the Federal Rules of Civil Procedure provides that the Rules "shall not be con-

strued to extend or limit the jurisdiction of the United States district courts …"

**8.**  The Court has previously held that 12 U.S.C. § 1821(d)(6)(A) confers substantive jurisdiction over claims filed pursuant to FIRREA.  *See, e.g., FDIC v. The Satter Companies,* 791 F.Supp. 26, 27 n. 2 (D.Me.1992); *Perkins v. Farrah,* 791 F.Supp. 24, 25 n. 1 (D.Me.1992).  It has expressly noted that, except as otherwise provided in subsection 1821(d)(6)(A), "FIRREA withdraws all jurisdiction of this Court."  *Satter, supra,* 791 F.Supp. at 27 n. 2.

this Motion to Dismiss as it would if persuaded that it had jurisdiction over Plaintiffs' Complaint.

### B.

■ Defendants next argue that the Complaint should be dismissed because it alleges no basis for challenging the FDIC's repudiation of the lease under 12 U.S.C. section 1821(e) and, further, that each element of the statute has been satisfied.[9] *See* Defendants' Memorandum at 6–8.

The Court concludes that a factual determination is required to ascertain whether the FDIC complied with the statute's prerequisites and, therefore, a Rule 12(b)(6) dismissal of Plaintiffs' Complaint, based on 12 U.S.C. section 1821(e)(1)(B) and (C), is inappropriate. *See, e.g., 701 NPB Associates v. FDIC,* 779 F.Supp. 1336, 1339 (S.D.Fla.1991) (what constitutes a "reasonable time" for FDIC's repudiation of lease is a "fact sensitive," case-by-case determination, so court denied FDIC's motion to dismiss count seeking declaratory judgment); *Resolution Trust Corp. v. United Trust Fund, Inc.,* 775 F.Supp. 1465, 1469–70 (S.D.Fla.1991) (RTC failed to repudiate lease within reasonable period, resulting in judgment for counterclaim plaintiff); *Atlantic Mechanical, Inc. v. Resolution Trust Corp.,* 772 F.Supp. 288, 291 (E.D.Va.1991) (court found in bench trial that RTC did not abuse its discretion in deciding that contract was burdensome and that the contract's repudiation would promote the orderly administration of the Bank's affairs), *aff'd,* 953 F.2d 637 (4th Cir.1992); *Rexam Ltd. Partnership, S.E. v. Resolution Trust*

*Corp.,* 766 F.Supp. 41, 47 (D.P.R.1991) (court noted, in granting summary judgment for plaintiff, that case "offers very little elucidation about the manner in which [RTC's] compliance with the contract would be burdensome or interfere with the orderly administration of the RTC's affairs"); *Union Bank v. FSLIC,* 724 F.Supp. 468, 471–72 (E.D.Ky.1989) (court noted, in granting summary judgment for FSLIC, that "FIRREA by its terms places the determination of whether a contract is burdensome within the conservator's discretion."). *Cf. First National Bank v. Unisys Finance Corp.,* 779 F.Supp. 85, 87 (N.D.Ill.1991) (motion to dismiss granted because section 1821(e) barred recovery of pledged securities).

In applying the standard for dismissal under Rule 12(b)(6), the Court is unpersuaded that Plaintiffs cannot prove a "set of facts in support of [their] claim which would entitle [them] to relief;" namely, whether the FDIC abused its discretion in concluding that the lease was burdensome, that repudiation of said lease will promote the orderly administration of the FDIC's affairs, and that the repudiation was timely. Therefore, the Court rejects Defendants' invocation of 12 U.S.C. section 1821(e) as a basis for dismissing Plaintiffs' Complaint.[10]

### C.

Defendants invoke 12 U.S.C. section 1823(e) as another basis for dismissing Plaintiffs' Complaint. Section 1823(e) both incorporated and clarified the common law estoppel doctrine articulated by the Su-

---

**9.** Section 1821(e)(1) provides in pertinent part: [T]he conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease:

(A) to which such institution is a party;

(B) the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and

(C) the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.

Further, under section 1821(e)(2): The conservator or receiver appointed for any insured depository institution ... shall deter-

mine whether or not to exercise the rights of repudiation under this subsection *within a reasonable period* following such appointment.

12 U.S.C. § 1821(e)(2) (emphasis added).

**10.** Defendants also argue that "Congress did not provide for lessors to seek judicial review of a disaffirmance decision in a declaratory judgment action." *See* Defendants' Memorandum at 7–8. They, however, fail to provide any authority for such a proposition, other than citing the statute itself, which, on its face, does not expressly preclude declaratory judgment actions.

preme Court in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). Under that section, "no agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it ... shall be valid against the Corporation." [11] *See also FDIC v. O'Neil*, 809 F.2d 350, 354 (7th Cir.1987) ("[The FDIC] can ignore any side agreement imposing conditions on the promissory notes that it acquires from troubled banks unless the agreement conforms to the demanding requirements of section 1823(e)."). Defendants assert that Plaintiffs' claims seek to diminish or defeat the interest of the FDIC in the Note and, therefore, must meet the four statutory requirements of section 1823(e). *See* Defendants' Memorandum at 9. Specifically, they argue that the Lease, which Plaintiffs seek to enforce, fails to meet the contemporaneous execution and approval requirements. *See id.* at 11.

Plaintiffs allege that the Note, Lease, and other loan documents constitute a single contract [12] and, therefore, the Lease cannot be construed as a separate side agreement subject to the requirements under section 1823(e). *See* Plaintiffs' Memorandum at 17–20, 29–30. [13] "Where, as here, the same parties execute and put into effect several integrated instruments conditioned on each other and relating to the same subject matter, the instruments constitute a single contract—particularly where the parties so intended and the lease was executed in contemplation of, shortly before, and as a condition to, the closing on the loan." *Id.* at 19.

Plaintiffs further allege that, even if section 1823(e) does apply, the statutory requirements have been satisfied. *See id.* at 30–32. Specifically, they argue that the documents in question were executed contemporaneously because "[t]hey are part of one closing binder and went into effect at the same time. The execution of each was a condition to the execution of the other. The fact that the lease was signed two weeks *before* the closing only emphasizes this fact. The lease dealt with premises *that were not even existing at* the time and which would not exist but for the loan." *Id.* at 31 (emphasis in original).

The Court disagrees. In examining the Lease, the Court finds that it is a separate, independent contract that contains no reference to the Note or other subsequently

11. No such agreement shall be valid against the FDIC unless such agreement—

    1) is in writing;

    2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution;

    3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee; and

    4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e).

Agreements not meeting all four requirements set forth under the statute are unenforceable against the FDIC. *See FDIC v. Rivera–Arroyo*, 907 F.2d 1233, 1236 (1st Cir.1990); *Bateman v. FDIC*, 766 F.Supp. 1194, 1200 (D.Me.1991).

The United States Supreme Court has given a very broad definition to the "agreements" that must meet the four requirements of section 1823(e):

    Certainly, one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead banking authorities, whether the condition consists of performance of a counterpromise (as in *D'Oench, Duhme*) or of the truthfulness of warranted fact.

*Langley v. FDIC*, 484 U.S. 86, 92–93, 108 S.Ct. 396, 399, 98 L.Ed.2d 340 (1987).

12. Plaintiffs' allegation that the loan documents form a "single contract" is a legal conclusion that need not be accepted as true under the standards for dismissal established by the First Circuit Court of Appeals. *See Kadar Corp.*, 549 F.2d at 249.

13. As support for this proposition, Plaintiffs erroneously and inexplicably cite to the case of *Boulos v. FDIC*, No. 91–0360–P. In reference to this case, they state:

    *[I]t is believed* that the FDIC settled on terms very favorable to the borrower, this Court *according to reports from counsel* indicated that ...

Plaintiff's Memorandum at 30 n. 14 (emphasis added). The above characterization is absolutely without precedential or persuasive effect. Counsel in future should abjure such meaningless speculations about cases that are disposed of by agreement without formal adjudication of issues by the Court.

executed loan documents.[14] Similarly, the Note makes no mention of the Lease.[15] Significantly, the Lease was *not* executed at the same time as the Note and the other loan documents. *Cf. Carvel Corp. v. Diversified Management Group, Inc.*, 930 F.2d 228, 233 (2d Cir.1991) ("Under New York law, instruments *executed at the same time*, by the same parties, for the same purpose and in the course of the same transaction will be read and interpreted together.") (emphasis added); *Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 107 (3d Cir.1986) ("It is a general rule of contract law that where two writings are *executed at the same time* and are intertwined by the same subject matter, they should be construed together and interpreted as a whole, each one contributing to the ascertainment of the true intent of the parties.") (emphasis added). The Court concludes that the Lease is a separate agreement, subject to the requirements of section 1823(e).

In this regard, the statutory requirements under section 1823(e) have not been satisfied. Under section 1823(e)(2), an agreement not executed by the bank *"contemporaneously* with the acquisition of the asset" by that bank cannot serve to defeat the FDIC's interest in that asset. *See, e.g., FDIC v. P.L.M. International, Inc.*, 834 F.2d 248, 253 (1st Cir.1987) (release agreement dated April 17, 1983, was not executed contemporaneously with the letter of guaranty dated December 31, 1981); *FDIC v. Cremona Co.*, 832 F.2d 959, 962 (6th Cir.1987) (Partnership Agreement dated April 12, 1974, was not executed contemporaneously with the acquisition of any of the notes by the bank, which were dated April 30, May 31, and July, 1974; whereas Agreement to be Bound was executed con-

temporaneously because it was prepared by the bank, and presented to and signed by the defendant at the same time as one of the notes), *cert. dismissed*, 485 U.S. 1017, 108 S.Ct. 1494, 99 L.Ed.2d 883 (1988); *FDIC v. La Rambla Shopping Center*, 791 F.2d 215, 220 (1st Cir.1986) (the 1968 lease that is the subject of Defendant's counterclaim was not executed contemporaneously with the note that evidences the 1970 loan); *Fleet Bank of Maine v. Steeves*, 785 F.Supp. 209, 215 (D.Me.1992) ("[T]he Agreement was executed approximately nine months before the First Note and more than two years before the Equity Line Agreement. It therefore fails to meet the second requirement under section 1823(e)(2)."); *FDIC v. Friedland*, 758 F.Supp. 941, 943 (S.D.N.Y.1991) (investment agreement dated May 10, 1984, was not executed contemporaneously with acquisition on the same date of a promissory note by the bank and, therefore, said agreement was not binding on FDIC under 1823(e)).

Here, the transactions at issue occurred over a period of several weeks. The Commitment Letter was issued on April 12, 1988; the Lease was entered into between Douglas Cardente, as landlord, and MNB, as tenant, on May 19, 1988; and, two weeks later, on June 2, 1988, Defendants executed and delivered to MNB the loan closing documents, including the Note, Mortgage, and Agreement. Although the Lease was executed by the Bank, it was not executed "contemporaneously" with the loan documents. Therefore, consistent with prior judicial interpretation of section 1823(e)(2), this Court finds that Plaintiffs' claim fails to meet the contemporaneous execution requirement under the statute and, thus, it must be dismissed.[16]

---

**14.** Plaintiffs provide no authority for their proposition that all of the documents in the loan closing binder constitute a single contract, nor could the Court locate any such authority.

**15.** The Note does contain an integration clause, which states as follows:

This Promissory Note is intended by maker and holder as a final expression of the agreement of the parties with respect to the subject matter hereof. No oral, verbal or other ex-

trinsic evidence of any nature, course of prior dealing between the parties, or usage of trade shall be used to supplement or modify any term hereof.
Complaint, Exhibit G, at 6.

**16.** Defendants also argue that Plaintiffs fail to satisfy section 1823(e)(3). Courts have held that section 1823(e)(3) requires specific approval of the agreement that is sought to be enforced by the bank's board of directors or loan committee,

### D.

To avoid the requirements of section 1823(e), Plaintiffs also argue that the documents evidenced "bilateral obligations," thereby invoking a judicially-recognized defense to the application of section 1823(e). Plaintiffs' Memorandum at 26–29. They assert that courts have held that "bilateral obligations asserted by borrowers in defense to the FDIC's efforts to collect on a note may be contained in *one or more* of the loan documents." *Id.* at 26 (emphasis in original) (citing *FDIC v. Laguarta,* 939 F.2d 1231, 1238–39 (5th Cir. 1991); *Baumann v. Savers Federal Savings & Loan Association,* 934 F.2d 1506, 1516–18 (11th Cir.1991); *FDIC v. McClanahan,* 795 F.2d 512, 515 (5th Cir.1986); *Howell v. Continental Credit Corp.,* 655 F.2d 743, 746 (7th Cir.1981); *In re Hunter,* 100 B.R. 321, 325–26 (S.D.Tex.1989); *FDIC v. Rivera–Arroyo,* 645 F.Supp. 511, 521 (D.P.R.1986); *Riverside Park Realty Co. v. FDIC,* 465 F.Supp. 305, 312–13 (M.D.Tenn. 1978)).

Defendants argue that the Lease and Note do not "facially manifest" bilateral obligations as to the other. Defendants' Memorandum at 17. "Neither the Note nor any of the other Loan Documents reference the Lease Agreement, let alone condition enforcement of the Note on payment of rent." *Id.* at 17–18.

The Court agrees. Here, the Lease, like those described in *Howell,* contains bilateral obligations, and it was an executed document contained in the bank records, *cf. Twin Construction, Inc. v. Boca Raton, Inc.,* 925 F.2d 378, 384 (11th Cir.1991); *Bell & Murphy & Associates, Inc. v. Interfirst Bank Gateway, N.A.,* 894 F.2d 750, 754 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990). Unlike *Howell,* however, the asset in question, upon which the FDIC is attempting to enforce and recover, is the *Note, not* the Lease.[17] Moreover, the Note contains ab-

---

and that such approval be reflected in the minutes of the meeting at which it took place. *See, e.g., P.L.M. International,* 834 F.2d at 253 ("[T]he minutes of the meeting of the board of directors and the credit committee did not refer to or discuss the release...."); *Cremona Co.,* 832 F.2d at 962 ("[T]he minutes of N.O.B.'s loan committee do not reflect the loan committee's approval of the Partnership Agreement.... [T]here is no evidence that the ... Agreement was eventually found in the records of the N.O.B. .... [I]t is not enough that the ... Agreement was eventually found in the records of the N.O.B."); *Friedland,* 758 F.Supp. at 943–44 ("[The alleged agreement] was not approved by the Board of Directors or Loan Committee of the depository institution."); *FDIC v. Gardner,* 606 F.Supp. 1484, 1488 (S.D.Miss.1985) ("The entry [on the minutes of the Bank Board of Directors meeting] manifests that specific approval of the subject side agreement is not 'reflected in the minutes of said board or committee.' The side agreement itself must be referenced or its existence must be affirmatively and directly acknowledged by the Bank's board of directors or loan committee, and such reference to, or acknowledgement of the side agreement must be specifically reflected in the minutes of the board or committee.").

Here, Plaintiffs fail to allege in their Complaint that approval by the bank's board of directors or loan committee was ever made. However, the standard to be applied here on Defendants' motion to dismiss is that such dismissal occurs "only if the plaintiff cannot prove any set of facts upon which relief may be grant-

ed." *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102. Here, Plaintiff could come forward with a record of the minutes of MSB's Board of Directors or Loan Committee meeting, showing that such approval of the Lease was granted. Therefore, in the context of a Rule 12(b)(6) motion to dismiss, the Court disagrees with Defendants' assertion that Plaintiffs' fail to satisfy section 1823(e)(3).

17. In *Howell,* the Court found the *D'Oench, Duhme* doctrine inapplicable where "the document the FDIC seeks to enforce is one, such as the leases here, which facially manifests bilateral obligations and serves as the basis of the lessee's defense." 655 F.2d at 746. *See also Bell & Murphy,* 894 F.2d at 754 ("While *Howell* ... does contain somewhat expansive language to the effect that the FDIC is bound by bilateral agreements made by failed banks, a close reading of that decision reveals that the bilateral obligations at issue there appeared on the face of the written, properly recorded *agreement which the FDIC sought to enforce.*") (emphasis added); *Riverside Park Realty Co.,* 465 F.Supp. at 313 ("When ... the asset upon which the FDIC is attempting to recover is *the very same agreement* that the makers allege has been breached by the FDIC's assignors, § 1823(e) does not apply. None of the policies that favor the invocation of this statute are present in such cases because the terms of the agreement that tend to diminish the rights of the FDIC appear in writing on the face of the agreement that the FDIC seeks to enforce.").

solutely no reference to and reveals no connection with the Lease. The Court concludes as a matter of law that the asset here, *i.e.*, the Note, either singularly or, alternatively, read together with the Lease, is unambiguous as to intent on this issue, and that it does not manifest bilateral obligations. *See FDIC v. Hamilton*, 939 F.2d 1225, 1231 (5th Cir.1991); *FSLIC v. Two Rivers Associates, Inc.*, 880 F.2d 1267, 1275 (11th Cir.1989). Therefore, even if Plaintiffs' factual allegations are true, they do not preclude application of section 1823(e), in spite of the "bilateral obligation" exception articulated in *Howell*.[18]

### E.

 The Court finds that Counts I, II, and III of Plaintiffs' Complaint seeking damages or other relief against RECOLL Management Corporation ("RECOLL") must be dismissed as a matter of law. The Complaint, which describes RECOLL as the FDIC's agent,[19] contains no allegations that RECOLL itself was involved in the transaction at issue, let alone any allegation of wrongdoing by RECOLL. RECOLL is not a party to any of the agreements at issue in this case. Under Maine law, an agent, who is not a party to a contract between its disclosed principal and a third party, is not liable for the breach of the contract. *See, e.g., Mueller v. Penobscot Valley Hospital*, 538 A.2d 294, 299 (Me. 1988) ("[D]efendant Kirley was employed by P.V.H.... He was not a party to any contract made between P.V.H. and the plaintiff following plaintiff's resignation from P.V.H. in 1978, and he is not personally liable for breach of any such contract."); *Depositors Trust Co. v. Farm Family Life Insurance Co.*, 445 A.2d 1014, 1020 n. 5 (Me.1982) (FSLIC's liability on the contract was independent of any liability that its agent Foster might have had. Foster was

not a party to the contract ..."). Therefore, RECOLL may not be held liable for any of the alleged breaches and, accordingly, Counts I, II, and III must be dismissed as to RECOLL.

### IV. CONCLUSION

Accordingly, it is *ORDERED* that Defendants FDIC and RECOLL's Motion to Dismiss Counts I, II, and III be, and it is hereby, *GRANTED*.

---

**18.** The Court intimates no opinion as to whether it would accept as valid law in the First Circuit the holding of *Howell* on the "bilateral obligation" exception to the force of § 1823(e) in a case where that issue was presented.

**19.** Under Maine law, "it is axiomatic that all material allegations are to be taken as admitted for the purpose of ruling on a motion to dis-

miss." *McNally v. Freeport*, 414 A.2d 904, 905 (Me.1980) ("[T]he Town ... asserts that as a matter of law it cannot be held liable for the alleged negligence of ... Dunphey because she was an independent contractor and not an agent of the Town. This contention must be rejected. The Complaint alleges that ... Dunphey is an agent of the Town....").