**RESOLUTION TRUST CORP.,**
etc., Plaintiff,

v.

**HIDDEN PONDS PHASE IV DE-**
**VELOPMENT ASSOCIATES,**
et al., Defendants.

No. CV 92–3534.

United States District Court,
E.D. New York.

Jan. 31, 1995.

Berkman, Henoch, Peterson, Peddy & Scarcella, P.C. by Thomas E. Stagg, Garden City, NY, for plaintiff.

Meltzer, Lippe, Goldstein, Wolf, Schlissel & Sazer, P.C. by Richard Gabriele, Mineola, NY, for defendants Hidden Ponds Phase IV Development Associates & Solgar Co., Inc.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Resolution Trust Corporation ("RTC"), as receiver for Whitestone Federal Savings and Loan Association ("Whitestone") and Nassau Savings and Loan Association, F.A. ("Nassau"), brought this action to foreclose a first mortgage given by defendant Hidden Ponds Phase IV Development Asso- ciates ("Phase IV") and to foreclose a subordinate mortgage held by defendant Solgar Credit, A Division of the Solgar Company, Inc. ("Solgar"). Presently before the Court are plaintiff's motion for an order, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure ("FRCP"), granting summary judgment against defendants and defendants' cross-motions for an order, pursuant to Rule 37(c)(1) of the FRCP, precluding plaintiff from moving to strike defendants' affirmative defenses, and for an order, pursuant to Rule 56(f) of the FRCP, staying plaintiff's motion pending additional discovery.

## I. FACTS AND BACKGROUND

Hidden Ponds Associates ("HPA") was the developer of a parcel of residential real estate in Long Island, New York (the "parcel"). HPA was composed of two general partners, N.W. Associates and State Associates. N.W. Associates, in turn, was a partnership between Whitestone Equities Hauppauge Corp. ("Whitestone Equities") and Nassau Equities Smithtown Corp. ("Nassau Equities"). Whitestone Equities and Nassau Equities were wholly owned subsidiaries of Whitestone Savings, F.A. ("Old Whitestone") and Nassau Federal Savings and Loan Association ("Old Nassau"), respectively.

By contract dated April 8, 1987 (the "contract"), HPA sold a section of the parcel (the "premises") to Lewis S. Meltzer. The purchase price, as set forth in Schedule A of a rider to the contract, was $5,363,644. The purchaser was to satisfy $3,832,500 of that amount by executing and delivering a note and purchase-money mortgage to the seller. The purchaser intended to build and sell 73 residential housing units on the parcel, and, to that end, the contract provided, *inter alia*, that the "[s]eller represents that the present sewer system is adequate to service the proposed 73 units to be constructed ... and will continue to be adequate in the future to permit such hook up" and that "[s]eller will perform such work to keep same in compliance with all municipal ordinances or requirements."

By contract dated April 23, 1987, Mr. Meltzer assigned his rights and duties under the contract to Phase IV (the "contract assign-

ment"). On July 10, 1987, Phase IV executed and delivered a note to HPA in the sum of $3,832,500 (the "note"). On the same day Phase IV executed and delivered a mortgage to HPA to secure repayment of the note (the "mortgage"). The mortgage was recorded.

By contract dated June 20, 1988, HPA assigned its rights under the note and the mortgage to Old Whitestone and Old Nassau (the "mortgage assignment"). The mortgage assignment was recorded. Prior to the mortgage assignment, by estoppel certificate dated April 20, 1988, Phase IV acknowledged that the mortgage assignment was to be made and that there were no defenses or offsets to the note or the mortgage.

On March 15, 1990, the Office of Thrift Supervision of the Department of the Treasury of the United States ("OTS") appointed the RTC as receiver for Old Whitestone and Old Nassau. The RTC immediately organized and chartered two new federal savings associations, Whitestone and Nassau, for which the RTC was appointed conservator by the OTS. On March 16, 1990, the RTC, as receiver for Old Whitestone and Old Nassau, entered into agreements with the RTC, as conservator for Whitestone and Nassau, whereby substantially all of the assets of Old Whitestone and Old Nassau were transferred to Whitestone and Nassau, respectively (the "purchase and assumption transactions").

On June 29, 1990, Phase IV entered into an agreement with Whitestone and Nassau by which the maturity date of the note and the mortgage was extended to August 31, 1990 (the "extension agreement"). Phase IV made payments pursuant to the note and the mortgage through July 31, 1990 in the total amount of $2,821,875. But on August 31, 1990, Phase IV failed to make payment of the $1,010,625 principal balance and accrued interest owed under the note and the mortgage.

The RTC was appointed as receiver for Whitestone and Nassau by the OTS on November 16, 1990; it brought this foreclosure action in July 1992.[1] Phase IV and Solgar submitted an answer, in which they raised five affirmative defenses. Three of the five affirmative defenses are relevant to the summary judgment motion presently before the Court. The second affirmative defense suggests that the Court abstain because of the existence of a "closely-related action [pending] in state court." Answer ¶ 26. The fourth affirmative defense asserts that the mortgage is "void and unenforceable by reason of lack of consideration." Id. ¶ 28. The fifth affirmative defense alleges that the sale of the premises, the note, and the mortgage were procured by fraud and misrepresentations. Id. ¶ 32.

At its core, the defense emanates from assurances relating to the sewage system made by HPA in the contract. Defendants contend that despite "HPA's representations and promises.... [t]he sewer system ... never worked properly.... [and] was not adequate to permit hook up to the 73 homes intended to be built [on the premises]." Affidavit of Lewis S. Meltzer ¶ 40. Defendants allege that, because of the inadequate sewage system, they were able to build only 43 of the 73 units. For this reason, defendants insist that they should not be responsible for paying the balance due on the note.

Discovery continued through November 1994. As discovery neared its conclusion, plaintiff sought and was given permission by the Court to make the instant summary judgment motion. The case has since been marked ready for trial.

## II. DISCUSSION

■ A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of " 'informing the ... court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the

---

1. In addition to Phase IV, which gave the note and the mortgage, and Solgar, which holds a subordinate mortgage on the premises, the complaint filed by plaintiff names as defendant National Westminster Bank, USA ("NatWest"), which holds three subordinate mortgages on the premises. NatWest indicated, by letter to plaintiff's counsel dated August 25, 1992, that it has no interest in the premises.

absence of a genuine issue of material fact.'" *FDIC v. Giammettei,* 34 F.3d 51, 54 (1994) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The nonmoving party may defeat the summary judgment motion by producing sufficient evidence to establish a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment, a court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Donohue v. Windsor Locks Bd. of Fire Comm'rs.,* 834 F.2d 54, 57 (2d Cir.1987). The nonmoving party, however, "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Indeed, the nonmoving party's opposition may not rest on mere allegations or denials of the moving party's pleading, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In support of its motion, the RTC identifies the note, the mortgage, the mortgage assignment, and the extension agreement as evidence indicating the existence of the debt owed by Phase IV to Whitestone and Nassau, and the mortgage lien securing that debt. As evidence of Phase IV's default, the RTC proffers the affidavit of Darlene Austin, an independent asset manager hired by the RTC, as receiver for Whitestone and Nassau, to monitor the Phase IV account.

Defendants neither dispute the existence of their initial obligation on the face of the note and the mortgage, nor do they not claim that Phase IV satisfied the note in full; rather, defendants argue that the summary judgment motion should be denied because the fourth and fifth affirmative defenses raise genuine issues as to whether Phase IV remains obligated under the note and the mortgage. Defendants also urge the Court to abstain from the instant action, or, in the alternative, defer resolution of the motion pending further discovery.

## A. *Fourth and Fifth Affirmative Defenses*

Where a plaintiff uses a summary judgment motion to challenge the legal sufficiency of an affirmative defense, the affirmative defense should be stricken where the record viewed "in a light most favorable to the defendant reveals the absence of evidence supporting an essential element of the defense." *Giammettei,* 34 F.3d at 54–55; *see Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54.

 The Federal Deposit Insurance Act of 1950, as currently codified, provides that "no agreement which tends to diminish or defeat the interest of the [RTC] in an asset acquired by it ... by purchase ... shall be valid against the [RTC] unless" certain requirements are satisfied. 12 U.S.C. § 1823(e) (1988 & Supp.IV 1992); *see* 12 U.S.C. § 1441a(b)(4)(A) (affording protection under § 1823(e) to the RTC). The requirements are that

such agreement—(1) is in writing, (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) has been, continuously, from the time of its execution, an official record of the depository institution.

§ 1823(e). The RTC, as conservator for Whitestone and Nassau, purchased the note and the mortgage in the purchase and assumption transactions. Thus, if an affirmative defense is based on an "agreement which tends to diminish" the RTC's interests in the note and the mortgage, the defendants must overcome § 1823(e) as an essential element of that defense. *See Giammettei,* 34 F.3d at 55. If the evidence, viewed in the light most favorable to defendants, indicates that such a defense fails to meet the requirements of § 1823(e), it must be stricken.

 The term "agreement" as used in § 1823(e) "covers more than promises to perform acts in the future." *Langley v. FDIC,* 484 U.S. 86, 92, 108 S.Ct. 396, 401, 98

L.Ed.2d 340 (1987). The term "agreement" includes a "condition to payment of a note, including the truth of an express warranty." *Id.* at 96, 108 S.Ct. at 403. For example, the Supreme Court has held that a maker's defense of failure of consideration—*i.e.*, failure of the payee to perform a promise undisclosed on the face of a note as a condition precedent to the maker's performance—can be based only on an arrangement subject to the requirements of § 1823(e). *See id.* at 92–93, 108 S.Ct. at 401–02 (interpreting the meaning of § 1823(e) in the context of *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the "leading case applying [the term 'agreement'] to FDIC-acquired notes"). In addition, a contract will constitute an "agreement" within the meaning of § 1823(e) even where the party asserting an interest against the RTC claims to have been fraudulently induced into entering the contract. *See id.* 484 U.S. at 93–94, 108 S.Ct. at 402–03.

■ In the fourth affirmative defense, defendants contend that, in consideration for the note and the mortgage, HPA gave Phase IV a right to build on the premises and, *inter alia*, an assurance that the sewage system therein would be workable. That consideration failed, according to defendants, "because the sewer hook-ups guaranteed by HPA did not exist, [and Phase IV] could not build 30 of the 73 houses it had purchased the right to develop from HPA." Defendants' Memorandum of Law at 9. For this reason, defendants argue that the note and the mortgage are void and unenforceable. The note, however, embodies an unconditional promise by Phase IV to pay HPA a sum certain at a definite time; the mortgage secures that promise. In their fourth affirmative defense, defendants seek to add conditions to the note and the mortgage based on promises made by HPA in the contract. Those conditions would tend to diminish the RTC's interest in an asset that it had purchased. The fourth affirmative defense, therefore, will not survive plaintiff's motion for summary judgment unless the contract meets the requirements of § 1823(e).

■ Defendants allege in the fifth affirmative defense that Phase IV was defrauded by HPA because HPA made "material representations" to Phase IV regarding the sewage system, which HPA "knew or should have known were false." Although this argument is one of fraud in the inducement, defendants categorize it as one of fraud in the factum. Defendants' choice of doctrine is not surprising; whereas a note procured by fraud in the inducement is rendered voidable, a note procured by fraud in the factum is rendered completely void. If the note is void, it is beyond the reach of § 1823(e) because the RTC's interest therein would be extinguished, incapable of being diminished. Fraud in the factum, however, is "the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents." *Langley*, 484 U.S. at 93–94, 108 S.Ct. at 402–03; *see, e.g.*, U.C.C. § 3–305(2)(c) cmt. 7 (stating that the common illustration of fraud in the factum "is that of the maker who is tricked into signing a note in the belief that it is merely a receipt or some other document"). There is simply no evidence in the record indicating that Phase IV lacked knowledge of the note's "true nature or contents."

■ To the extent that the issue of material misrepresentations could ever provide a defense to the payment of the note, it could only constitute a defense of fraud in the inducement—*i.e.*, that HPA's misrepresentations in the contract fraudulently induced Phase IV into giving the note and the mortgage. Assuming that this is defendants' argument, its success, like the success of the lack of consideration defense, will depend on whether the contract meets the requirements of § 1823(e).

■ On its face, the contract fails to satisfy the requirements of § 1823(e). First, the contract has not been executed by the party "claiming an adverse interest thereunder." The contract constituted an agreement between HPA and Lewis S. Meltzer. Because Phase IV, not Mr. Meltzer, is claiming the adverse interest in the instant action, defendants do not satisfy the requirement. *See Giammettei*, 34 F.3d at 56. Defendants' argument that Mr. Meltzer signed the contract as agent for Phase IV fails. *See id.*

(holding that a general partner's signature on an "agreement" failed to satisfy § 1823(e) in a suit brought by the limited partners because the general partner's authority to bind the partnership was found in the partnership agreement, which was a separate "agreement" that also failed to satisfy § 1823(e)). Even if Mr. Meltzer had such authority, it could be based only on an "agreement" that would not satisfy § 1823(e). Defendants also claim that the requirement is satisfied because Mr. Meltzer assigned the contract to Phase IV two weeks after he signed it. Defendants, however, advance no authority in support of this proposition.

■■■ Second, the contract was not executed by "the depository institution." The depository institutions are Whitestone and Nassau; the contract was executed by HPA. The requirement is not satisfied by virtue of the fact that Old Whitestone and Old Nassau, through their ownership of Whitestone Equities and Nassau Equities, together held a one-half interest in HPA. *See Levy v. FDIC,* 7 F.3d 1054, 1057 (1st Cir.1993) (refusing, on similar facts, to disregard the corporate form of a failed bank's wholly owned subsidiary and impute the subsidiary's execution to the bank for purpose of § 1823(e)). Even if the Court considered HPA's signature to be an execution by a depository institution, that execution was not "contemporaneously [made] with the acquisition of the asset by the depository institution." The contract was signed on April 8, 1987; Old Whitestone and Old Nassau acquired the note and the mortgage by the mortgage assignment, dated June 20, 1988; and Whitestone and Nassau, the depository institutions for which the RTC brought this action as receiver, acquired the note and the mortgage by the purchase and assumption transactions, dated March 16, 1990.

■■■ Third, there is no evidence that the contract "was approved by the board of directors of [Whitestone or Nassau] or [either of their] loan committee[s], which approval shall be reflected in the minutes of said board or committee." Defendants do advance the minutes of Old Whitestone and Old Nassau board meetings that reflect discussion of the sale or potential sale of the premises by HPA, *see* Defendant's Exhs. HH, II, but this showing falls short of establishing approval by either board of directors. *See Giammettei,* 34 F.3d at 56–57 (holding that a reference to an "agreement" in a failed bank's board minutes was insufficient to satisfy § 1823(e), even where the "agreement" was part of a transaction that was in fact approved by the board of the bank).

■■■ Finally, defendants fail to establish that the contract "has been, continuously, from the time of its execution, an official record of [Whitestone or Nassau]." Defendants, on this point, do no more than offer their attorney's "best recollection" that the contents of a production of documents, which were contained in the files of Old Whitestone and Old Nassau, included the note, the mortgage, and the contract. Affidavit of Richard Gabriele ¶ 27. This evidence does not establish a genuine issue.

Viewing the evidence in a light most favorable to defendants, the Court determines that the contract does not satisfy the requirements of § 1823(e). Because the contract's successful traverse of § 1823(e) is an essential element of defendants' fourth and fifth affirmative defenses, those defenses must fall.

### B. *Second Affirmative Defense*

■■■ Defendants urge the Court to abstain from the instant action under *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), because an action between HPA and Phase IV, which is pending in state court, raises the same issue that defendants raise in the fifth affirmative defense. A district court has a "virtually unflagging obligation" to exercise its jurisdiction, and should abstain under *Colorado River* only where state and federal proceedings are "concurrent" and "exceptional circumstances" exist. *See Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244; *see also Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983); *Sheerbonnet, Ltd. v. American Express Bank, Ltd,* 17 F.3d 46, 47 (2d Cir.), *cert. denied,* —— U.S. ——, 115

S.Ct. 67, 130 L.Ed.2d 23 (1994). Where the proceedings are concurrent, a court should determine whether "exceptional circumstances" exist by examining six factors: (1) assumption of jurisdiction over a res; (2) inconvenience of the federal forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision in the federal case; and (6) protection of the federal plaintiff's rights. *See Moses H. Cone*, 460 U.S. at 16–19, 103 S.Ct. at 937–39; *De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir.1989).

 In the instant action, defendants have offered no proof indicating that the state and federal proceedings are actually "concurrent," *see Sheerbonnet*, 17 F.3d at 49–50 (declining to abstain solely because actions were not "concurrent"). In addition, defendants do not allege that the parties have proceeded further in state court than they have in the instant action, *see Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. at 939–40 (explaining that "priority" under the fourth factor should be determined "in terms of how much progress has been made in the two actions"), or that the federal forum is inconvenient. Even if a threat of piecemeal litigation exists, the fifth and sixth factors tip the balance decidedly in favor of exercising jurisdiction because issues of federal law are involved and the federal plaintiff's rights will not be adequately protected in state court. *See id.* at 26, 103 S.Ct. at 942 (stating that "the presence of federal-law issues must always be a major consideration weighing against surrender"); *see also Langley*, 484 U.S. at 91–92, 108 S.Ct. at 401–02 (articulating the important function served by § 1823(e) to federal banking authorities); *Giammettei*, 34 F.3d at 54–57 (same).

The Court, viewing the evidence in the light most favorable to defendant, is not convinced that abstention is appropriate. Defendants' second affirmative defense, therefore, does not withstand plaintiff's motion for summary judgment.

## C. *Defendants' Cross–Motion*

 Defendants move for an order, pursuant to Rule 37(c)(1) of the FRCP, precluding plaintiff from moving to strike defendants' affirmative defenses. Defendants allege that the RTC did not cooperate and disclose information in discovery. Rule 37(c)(1) prohibits a party, who has failed to disclose evidence that it was required to disclose, from using that evidence to its advantage. *See* Fed.R.Civ.P. 37(c)(1). Defendants' allege that plaintiff as failed to disclose bank documents as required. Even if this allegation is correct, the RTC has not attempted to use documents in support of its motion for summary judgment that were not disclosed to defendants. Thus, Rule 37(c)(1) does not apply. Nevertheless, the Court is not convinced that plaintiff has acted improperly.

 In the alternative, defendants move for an order, pursuant to Rule 56(f) of the FRCP, staying resolution of plaintiff's motion for summary judgment until additional discovery can be taken. This case was commenced in July 1992. Discovery began soon thereafter and continued through November 1994. Defendants application for further time to complete discovery was denied by Magistrate Judge Arlene R. Lindsay, by order dated September 19, 1994. To date, plaintiff has produced more than 30 boxes of documents for defendants to examine. There comes a point in time when discovery must end. Because the Court determines that defendants had ample time for discovery, the Court declines to stay resolution of plaintiff's motion under Rule 56(f).

## III. *CONCLUSION*

For the above reasons, defendants have not produced sufficient evidence to establish a genuine issue of material fact for trial. As such, plaintiff's motion for an order granting summary judgment against Phase IV and Solgar is granted. The Clerk of the Court is directed to enter judgment for plaintiff upon a determination of the judgment amount. To that end, Christopher M. Redmond, Esq., 160 Fourth Avenue, Brentwood, New York 11717, is appointed referee, pursuant to Rule 53(a) of the FRCP and Section 1321 of the New York Real Property Actions and Proceedings Law to ascertain and compute the amount due to plaintiff under the note and

the mortgage and to report whether the premises should be sold in one parcel.

SO ORDERED.