671 A.2d 158

REMINGTON INVESTMENTS, INC., PLAINTIFF–APPELLANT, v. MICHAEL DAVIS, PHILIP VICARI AND VICARI CONSTRUCTION & DEVELOPMENT, INC., DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Calendared for Submission December 20, 1995—Submitted December 21, 1995—Decided February 14, 1996.

Before Judges MUIR, Jr., BROCHIN and LOFTUS.

*Lyons & Doughty,* attorneys for appellant (*Hillary Veldhuis,* on the brief).

*Berger & Bornstein,* attorneys for respondents (*Paul H. Schafhauser,* on the brief).

The opinion of the court was delivered by

BROCHIN, J.A.D.

Mountain Ridge State Bank was declared insolvent and closed by the State Commissioner of the Department of Banking on October 5, 1990. Pursuant to 12 *U.S.C.A.* § 1821, the Federal Deposit Insurance Corporation was appointed as liquidating receiver for the bank. *See FDIC v. White,* 828 *F.Supp.* 304, 307 (D.N.J.1993). By an assignment from the FDIC dated September 13, 1994, plaintiff Remington Investments, Inc. purchased a bulk portfolio of distressed loans. The assigned loans included two loans made by Mountain Ridge State Bank to defendant Vicari

Construction and Development, Inc. and guaranteed by defendants Michael Davis and Philip Vicari. The subject of this appeal is the efforts of plaintiff to collect those two loans from the corporate borrower and the guarantors.

One of the loans at issue is an installment loan in the original principal amount of $100,000, evidenced by a promissory note dated February 13, 1990. The other loan is an overdraft loan on a checking account. Plaintiff alleges that as of July 14, 1995, the amount due and unpaid on these loans, including interest and attorneys' fees, was $127,844.26 on one and $15,551.46 on the other.

The loans were assigned to plaintiff Remington Investments after unsuccessful collection efforts by the FDIC. Remington Investments sued Vicari Construction, Michael Davis and Philip Vicari. Without providing any discovery and before the expiration of the discovery period, plaintiff moved for summary judgment. That motion and a subsequent motion for reconsideration were denied. We granted plaintiff's motion for leave to appeal from those decisions.

Defendant Philip Vicari's certification in opposition to the summary judgment motion asserts that when he and Michael Davis, both principals of the borrower, executed their guarantees, the president of Mountain Ridge State Bank told him that the bank "would extend the terms of the loans to Vicari Development, so that if need be, the loans could be 'rolled over' at Vicari Development's option," and that the bank would exhaust its remedies against the corporation before seeking to collect from them personally. Mr. Vicari's certification also alleges that he told the FDIC about this understanding while it was receiver for the bank. In opposition to plaintiff's motion for reconsideration, Mr. Davis filed a certification which reiterates Mr. Vicari's assertions and, in addition, alleges that the overdraft loan was paid in full, and that

the $100,000 loan was also partially paid.[1]

Plaintiff's principal response to these allegations is that 12 *U.S.C.A.* § 1823(e), which codifies and expands the doctrine first announced by the United States Supreme Court in *D'Oench, Duhme & Co. v. FDIC,* 315 *U.S.* 447, 62 *S.Ct.* 676, 86 *L.Ed.* 956 (1942), makes defendants' factual contentions immaterial. *See FDIC v. Blue Rock Shopping Center, Inc.,* 766 *F.*2d 744, 753 (3d Cir.1985) (citing *Howell v. Continental Credit Corp.,* 655 *F.*2d 743, 746 (7th Cir.1981) ("Congress codified the rationale of *D'Oench, Duhme* in 12 *U.S.C.A.* § 1823(e)....")). The facts of *D'Oench, Duhme* are that as part of the collateral for its loan to a bank, the FDIC acquired what purported to be promissory notes evidencing a borrower's indebtedness to the bank. Secretly, the bank had given the maker of the notes a writing that memorialized their agreement that the notes would not be paid. The Supreme Court held that the maker was liable to the FDIC on the notes because a secret agreement which diminished what appeared to be bank assets on which regulators were entitled to rely was contrary to federal banking policy.

The statute, 12 *U.S.C.A.* § 1823(e) reads as follows:

> No agreement which tends to diminish or defeat the interest of the [Federal Deposit Insurance] Corporation [2] in any asset acquired by it under this section ..., either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
>
> (A) is in writing,
>
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

---

[1] Mr. Davis's certification also alleges that the guarantee does not cover the $100,000 loan. However, that allegation is contrary to the clear language of the guarantee and the allegation has apparently been abandoned on appeal.

[2] *See* 12 *U.S.C.A.* § 1811.

(D) has been, continuously, from the time of its execution, an official record of the depository institution.

[12 *U.S.C.A.* § 1823(e)(1) (footnote added) ].

In *Langley v. FDIC,* 484 *U.S.* 86, 108 *S.Ct.* 396, 98 *L.Ed.*2d 340 (1987), the FDIC was suing to collect money which makers of a promissory note had borrowed from a bank to finance their purchase of land. The note was among the assets acquired by the FDIC as a result of the bank's insolvency. The issue before the Court was whether the borrowers should have been allowed to prove in their defense that they had been induced to borrow the money and execute the note by the bank's material misrepresentations about the quantity and quality of the land. In reliance on 12 *U.S.C.A.* § 1823(e), the district court had rejected the borrowers' defense and granted summary judgment in favor of the FDIC. The Circuit Court agreed.

Affirming those decisions, the Supreme Court explained that "[o]ne purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets" and "[n]either ... would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions." *Id.* at 91–92, 108 *S.Ct.* at 401, 98 *L.Ed.*2d at 347. A second purpose of § 1823(e), the Court wrote, "is implicit in its requirement that the 'agreement' ... have been executed and become a bank record 'contemporaneously' with the making of the note...." That requirement "prevent[s] fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure." *Id.* at 92, 108 *S.Ct.* at 401, 98 *L.Ed.*2d at 347. Furthermore, the Court held:

The short of the matter is that Congress opted for the certainty of the requirements set forth in § 1823(e). An agreement that meets them prevails even if the FDIC did not know of it; and an agreement that does not meet them fails even if the FDIC knew. It would be rewriting the statute to hold otherwise.

[*Id.* at 95, 108 *S.Ct.* at 403, 98 *L.Ed.*2d at 349].

12 *U.S.C.A.* § 1823(e) has been applied at the behest of the FDIC and its assignees to defeat the claims and defenses of

borrowers based on a wide variety of agreements whose only flaw was their failure to meet the requirements of the statute. *See, e.g., FDIC v. Wright,* 942 *F.*2d 1089 (7th Cir.1991) (holding that *D'Oench* doctrine applied where the only fault on part of borrower was her failure to reduce agreement to writing), *cert. denied,* 504 *U.S.* 909, 112 *S.Ct.* 1937, 118 *L.Ed.*2d 544 (1992); *Black v. FDIC,* 640 *F.*2d 699 (5th Cir.) (unwritten understanding to make construction loans on certain real estate and disregard prior tardiness of the obligors), *cert. denied,* 454 *U.S.* 838, 102 *S.Ct.* 143, 70 *L.Ed.*2d 119 (1981); *FDIC v. Lattimore Land Corp.,* 656 *F.*2d 139 (5th Cir.1981) (oral agreements to make future loans); *FDIC v. Hoover–Morris Enters.,* 642 *F.*2d 785 (5th Cir.1981) (agreement to take a deed as satisfaction of debt).

The applicability of 12 *U.S.C.A.* § 1823(e) to the agreement which defendants allege in the present case is indisputable. An undisclosed agreement to renew a loan—in effect an agreement that the loan need not be repaid—was the defense asserted by the notemaker in *D'Oench, Duhme & Co. v. FDIC, supra,* the United States Supreme Court decision which led to the enactment of 12 *U.S.C.A.* § 1823(e). The agreement alleged by defendants is therefore at the very center of the target at which the statute was aimed.

■ As the assignee from the FDIC, plaintiff succeeded to the protections of 12 *U.S.C.A.* § 1823(e). *FDIC v. Gilbert,* 9 *F.*3d 393, 395 n. 2 (5th Cir.1993) (noting that the *D'Oench* doctrine applies to subsequent purchasers and assignees of notes from the FDIC); *Newton v. Uniwest Financial Corp.,* 967 *F.*2d 340, 347 (9th Cir.1992) (explaining that the FDIC would have difficulty selling off loans if the protection of *D'Oench* did not apply to the FDIC's successors in interest); *Porras v. Petroplex Sav. Ass'n,* 903 *F.*2d 379 (5th Cir.1990) ("[T]he policy behind *D'Oench, Duhme* applies with equal force where the purchaser is a private party...."); *Bell & Murphy and Assocs., Inc. v. Interfirst Bank,* 894 *F.*2d 750, 754 (5th Cir.) (holding that the policy underlying the statute "compels the conclusion that assignees of the FDIC also enjoy

protection from claims or defenses based upon unrecorded side agreements"), *cert. denied,* 498 *U.S.* 895, 111 *S.Ct.* 244, 112 *L.Ed.*2d 203 (1990).

The bank's agreement to renew defendants' loans does not comply with the requirements of 12 *U.S.C.A.* § 1823(e). Defendants have not offered any evidence that they together, or any of them individually, signed a document which originated contemporaneously with the loans and which spells out an agreement that the loans would not have to be paid according to their apparent terms. That is the only sort of documented agreement which would constitute a valid defense against plaintiff's collection suit. By virtue of the statute, nothing else will suffice. *See, e.g., FDIC v. Bathgate,* 27 *F.*3d 850 (3d Cir.1994) (holding that letter from bank offering to consolidate debts could not be offered to prove accord and satisfaction); *Levy v. FDIC,* 7 *F.*3d 1054 (1st Cir.1993) (holding that claims based on other documents, but not in document FDIC sought to enforce or in closely related documents were barred by statute); *RTC v. Daddona,* 9 *F.*3d 312 (3d Cir.1993) (holding that writings that implied the existence of other agreements were insufficient to satisfy the statute); *Federal Savings & Loan Ins. Corp. v. Two Rivers Assocs., Inc.,* 880 *F.*2d 1267 (11th Cir.1989) (holding that borrowers' written reference to future terms was insufficient under statute); *FDIC v. O'Neil,* 809 *F.*2d 350 (7th Cir.1987) (holding that "implicit" agreements cannot be enforced against the FDIC); *Beighley v. FDIC,* 868 *F.*2d 776 (5th Cir.1989) (holding that the fact that bank issued written loan commitments to a third party and drew up documents for a closing on property owned by a borrower, does not establish, within the requirements of § 1823(e), that the bank promised the borrower it would finance these purchases).

In support of the Law Division's decisions denying summary judgment and adhering to that decision on reconsideration, defendants argue that the following are genuine issues of material fact which required denial of plaintiff's motions: the "knowledge, if any, of Remington and/or its alleged predecessors-in-interest re-

garding the defenses and claims of the defendants in this matter"; "the bad faith conduct of the FDIC with regard to the subject loan obligations"; "Remington's standing, if any, to maintain an action in courts of this State based upon the loan transaction here at issue"; and "the appropriate amounts due, if any, on the subject loan obligations." Defendants assert that they are entitled to pursue pretrial discovery in order to explore these issues.

The question whether Remington Investments has standing to sue as assignee would be material if it raised any genuine issue of fact. But it does not. Plaintiff has submitted a document, duly executed and acknowledged on behalf of the FDIC, confirming the assignment from the FDIC to plaintiff. Unless defendants can raise some question about the authenticity of that document—and they have not done so—it is dispositive of the standing issue. The "bad faith" which defendants attribute to the FDIC is its failure to renew their outstanding loans in accordance with their alleged agreement; but the purpose and effect of 12 *U.S.C.A.* 1823(e) are to authorize the FDIC to disregard an agreement which does not meet the statutory terms. Whether or not the FDIC knew about defendants' alleged agreement is legally immaterial. *Langley v. FDIC, supra,* 484 *U.S.* at 94–95, 108 *S.Ct.* at 403, 98 *L.Ed.*2d at 349. Plaintiff was entitled to summary judgment because none of the liability issues which defendants raise are material and none of the facts which they hope to discover would provide a basis upon which a trier of fact could reasonably find in their favor. *See Brill v. Guardian Life Ins. Co. of America,* 142 *N.J.* 520, 666 *A.*2d 146 (1995). If any of the defendants had executed the agreement on which they rely, they would not need discovery to be able to tell us about it.

The cases which defendants cite in support of the summary judgment in their favor are all distinguishable from the present case on their facts. Furthermore, many of them were decided before the United States Supreme Court's decision in *Langley v. FDIC* and were based upon a narrow construction of 12 *U.S.C.A.* § 1823(e) which that case rejected. For example, defendants cite

*FDIC v. Blue Rock Shopping Center, Inc.,* 766 *F.2d* 744 (3d Cir.1985), for the proposition that courts have recognized borrowers' defenses based on agreements which did not meet the requirements of § 1823(e). The holding of the Third Circuit Court of Appeals in that case was that § 1823(e) did not preclude the individual co-makers of a promissory note payable to a bank which had assigned it to the FDIC from asserting as a defense that they were accommodation makers who had been released from their obligations because the FDIC itself had unreasonably impaired the collateral security for their note. The facts of the case are distinguishable from ours because an agreement that co-makers of a note would have the status of accommodation sureties for the principal borrower is far more peripheral to the concerns at which § 1823(e) is directed than is an agreement that an ostensible borrower and guarantors have agreed with the lender that they would not have to satisfy their debts. Furthermore, in *Adams v. Madison Realty & Development, Inc.,* 937 *F.2d* 845, 857–58 (3d Cir.1991), the court which decided *Blue Rock* six years earlier expressly recognized that that case had been decided before *Langley,* and, to the extent that it was "inconsistent with the Supreme Court's opinion in *Langley,* our statement in *Blue Rock* must yield." *Id.* at 858.

*Resolution Trust Corp. v. North Bridge Assocs., Inc.,* 22 *F.*3d 1198 (1st Cir.1994), which defendants also cite, reversed a summary judgment granted by the district court in favor of Resolution Trust Company on the basis of 12 *U.S.C.A.* § 1823. The First Circuit Court of Appeals remanded the case to the district court to afford the debtors the opportunity to conduct pretrial discovery. Significantly, however, the Circuit Court explained that the borrowers were seeking to discover evidence in support of their contentions that the bank had caused their financial plight by paying contractors directly without authorization and by paying contractors for work that was substandard, that was never completed, and that deviated from the construction plans, all in violation of the plain terms of their construction loan agreement "that itself comports with the requisites of § 1823 and the

*D'Oench* doctrine...." *Id.* at 1208. These contentions alleged facts which were potentially material to a viable defense and therefore warranted discovery. We reiterate that, in contrast to the borrowers in *North Bridge*, the borrowers in the present case have not made a *prima facie* showing of facts which, if proved at trial, would constitute a valid defense to their liability on plaintiff's claims.

However, defendants have raised a genuine issue of material fact about the unpaid amount of their indebtedness. Insofar as appears from the present record, they are entitled to a trial on that issue and to appropriate discovery likely to lead to evidence relevant to the amount which they owe.

The case is therefore remanded to the Law Division for the entry of partial summary judgment striking their defenses on the issue of liability and for further proceedings not inconsistent with this opinion.